SIDNEY M. STONE & al., Ex'rs, versus JAMES W. NORTH, Ex'r.

A. devised the "use and income" of certain lands, and the "use, income and interest" of certain personal estate to his wife during her life. — *Held*, that the estate, personal and real, vested in the wife during her life.

Her interest in the personal property was not an annuity, but an estate for life, and the income arising from it may be apportioned to the time of her decease.

The provision of the will, that the personal estate should remain in the hands of executors, only interposed a trustee in whom the legal estate vested, but did not affect the duration and magnitude of the estate.

ON FACTS AGREED.

This was an action of DEBT. Plaintiffs claim a sum of money, due to their testatrix from the defendant, as executor of Enoch Jewett's will. The case was submitted on the following agreed statement:—

Enoch Jewett made his will on the sixth day of January, 1846, in which, after providing for the payment of his debts and sundry legacies, he gives to Lucretia Jewett, his wife and plaintiffs' testatrix, the use or income of property, in terms following, viz.:—

"I give and bequeath to her, (the said Lucretia,) in addition, the use, income or interest of all the personal estate of which I may die possessed, not herein before given and bequeathed to the several legatees mentioned, to have, possess and enjoy to her absolutely, for and during her natural life, *and no longer;* and the said real and personal estate, the use, interest and income of which I have herein devised and given to my beloved wife, for and during her natural life, upon her decease, I devise and give, and direct to be paid over and delivered to" sundry persons. "I also direct that the personal estate (the use, interest or income of which I have given to my beloved wife during her natural life,) should not be subject to the disposition, control or management of the legatee for life, but should be under the control and disposition of the executors, so that at the termination of the life, the said personal property may, undiminished as far as possible, go over and vest in the persons to whom the same is given as second

takers, absolutely;" and he appointed his wife, the said Lucretia, the defendant, and one Palmer, his executors. Administration was committed solely to the defendant. On the 23d of January, 1846, the said Jewett made a codicil to his said will as follows, viz. : after reciting that he had made and published his will, he says, " and whereas no money in hand was given to my beloved wife Lucretia Jewett, I, the said Jewett, within named, do by this present codicil to my last will and testament, ordain and order my executors to pay to Lucretia Jewett aforesaid, on demand, after my decease, five hundred dollars for her own use, besides the income of the personal estate above bequeathed;" which five hundred dollars was paid her immediately after said Jewett's death. The personal property, which comprised the great bulk of the estate, consisted principally of bank and other stocks, upon which the interest was payable semi-annually. Said Jewett deceased on the last of February, 1846; the widow was paid the income to March 30, 1854, and was annually paid to the 30th of March in each year. She deceased on the 3d of September, 1854; and if the Court should be of opinion that the defendant, as executor of said Jewett's estate, is liable to pay her executors the income of the life legacy from March 30, 1854, to September 3, 1854, the time of said Lucretia's death, then the defendant is to be defaulted for the sum of two hundred and seventy-two dollars, with interest from January 1st, 1855, the time of the demand, otherwise a nonsuit is to be ordered."

The plaintiffs, having requested an amendment of the agreed statement so as to show what part of the income of the residue of the estate was from bank stock, and what part from bonds, United States stock and notes, and the defendant not objecting, they annexed the following statement: —

" There are no notes belonging to the estate. A very small portion of the income for the year 1854 arises from interest on money in the executor's hands.

" The bank dividends were payable on the first Monday in March and September, and were about equal in amount to the

Stone *v.* North.

interest on the bonds and United States stock, which was payable on the 1st day of January and 1st day of July. The 1st Monday in September, 1854, was the 4th day.

"Mrs. Jewett living out of the State, the property was taxed to the executor in Augusta, and from the gross income of the estate that tax was payable, also the interest of Virginie H. Fra's, Sally J. Farley's and J. T. Jewett's legacy. So that it will be sufficiently accurate for the purposes of this case to consider half the income or interest to be paid Mrs. Jewett to arise from bank dividends, and half from interest on bonds and United States stock."

*M. T. Abbott,* for plaintiff.

*First.* The interest which Lucretia Jewett had by the will of Enoch Jewett in the residue of his estate is not an annuity, or a charge of a definite annual sum upon the property, but it is an estate for her life in all the residue of the personal estate.

*Second.* The provision made by the testator for his wife was intended for her support from year to year, while she lived, without reference to her means of support from other sources.

It is a well established principle of law, that a provision of income for the maintenance of a wife or child shall always be apportioned. The reason is, that the expense of living continues to the last day of life. *Howell* v. *Hanforth,* 2 Wm. Blackstone, 1016; *Hay* v. *Palmer,* 2 Peere Williams, 501; 1 Williams on Executors, 710.

*Third.* The residue, in which a life estate was given by the will to his widow, consisted, as appears from the will, partly of bank stock, partly of United States government stock, partly of city bonds and partly of notes of hand. If any part of the yearly income is to be exempt from apportionment to the time of her decease, it should be only the dividends from the bank stock. Whether there will be a dividend of profits cannot with certainty be ascertained until the semi-annual accounts are made up, and it may in some sense be said not to have accrued until declared. But the income

from promissory notes, city bonds and government stocks is interest; they are loans to the makers of the notes or bonds or scrip on which interest is paid to the lender. But interest accrues and is due from day to day, and every day, although by the terms of the loan it may be payable at a future day, and interest, therefore, is apportionable. 1 Williams on Executors, 711.

*Fourth.* There was no definite period of the year at which the income of the residue was payable to the widow. She was entitled to it from time to time as it accrued and was collected by the executor.

*Fifth.* If any one time in the year is to be selected as the time from which semi-annual payments are to be made of the income to the widow, it must be the time of the death of Enoch Jewett, which was the last day of February. Her semi-annual payments would then be due the last day of August and the last day of February in each year. She should then, on this principle, be paid all the income that had accrued or become payable on or before the last day of August, 1854.

*Sixth.* If the Court should be of opinion that the dividends on the bank stock should not be apportioned to the time of the death of the widow, but that the interest on the bonds, notes and government stocks should be apportioned, the plaintiffs consent and request that the statement of facts agreed upon may be amended, so as to show what portion of the income from these different sources became payable between the last of February and the third of September, 1854, and that the sum to be found due be computed accordingly.

But if this amendment cannot be made, the plaintiffs claim that the whole amount claimed in the statement must be found due to them, because the burden of showing what part of the income is exempt from apportionment should properly fall on the executor of Enoch Jewett; and because the claim for maintenance is a favored one; and because it appears that one semi-annual payment on all the stocks must have

occurred between the last of February, 1854, and the third of September, 1854.

*North, pro se.*

The plaintiffs contend that the interest given to Lucretia Jewett by the will is an estate for life in all the residue of the personal estate, and not an annuity or a charge of a definite annual sum upon the property.

This cannot be, for the personal property, of which she is to have the use, income or interest, goes into the hands of the executor, and not into her possession or under her control.

The language of the will is, "I bequeath to her the use, income or interest, of all the personal estate," &c., "to have, possess and enjoy, to her absolutely, for and during her natural life, and no longer;" the obvious meaning of which is, that she should have the income during her life; she can have no other or greater interest, as the will expressly prohibits the principal from being placed in her hands, or under her control.

The first expression of "life estate," in connexion with personal property, is a negative term, as "I devise a life estate only," used in advance of the limitation in the clause making the bequest, and also used in connexion with and referring to the real estate. She was to have the real estate in possession, and only "the use, income or interest of the personal estate" without the possession.

The expression, relating to the remainder of the property he has given her, "for and during her natural life," is no stronger than the limitation of the bequest, and is here used by way of recital, and as descriptive of the property, and not to define the extent of the legatee's interest therein, so that authority to apportion cannot be drawn from the terms of the bequest, making the interest of the widow a life estate in the property itself.

The intervention of a trustee, enabling the income to be apportioned, does not authorize or make it his duty so to

do, and no stronger argument can be drawn from this, than could be from a bequest of an annuity in express terms.

Vesting the property in the executor or trustee, was necessary to preserve the remainder, and this brings the widow's interest under those rules of law, which define her rights as to the amount and times of payment.

It is attempted to take this case from the general rule by considering the provision made for the widow as one of maintenance. This construction cannot obtain, for it does not appear from the will that maintenance was contemplated.

The authorities cited by plaintiffs are exceptions to the general rule relating to apportionment of annuities; they are cases of bequest specifically for maintenance.

If the testator, in the case at bar, had said in his will, " I give and bequeath to my wife an annuity of $600, to be paid to her during her natural life by my executor," the argument of the plaintiffs in relation to maintenance and apportionment would be equally applicable and forcible. Yet this would be an annuity payable at the end of each year, and could not be apportioned.

The defendant maintains the bequest to the widow to be (if not an annuity,) in the nature of an annuity. It is not a fixed sum, but the interest or income of the residue of the property, a sum to be ascertained. The will being silent as to the time of payment, the law fixes it as annual; and this was the intention of the testator, as appears from the considerations which have been presented.

Interest or income, the Court say, in *Clark* v. *Foster*, 8 Met. 568, is the net income, after deducting the taxes and expenses incurred from the management of the property, which in this case were annual expenses. The widow living out of the State, the property was taxed to the executor in Augusta. The net income could not be ascertained till the end of the year, when the taxes and expenses shall have become known; and the amount cannot be said to be due and payable till the time arrives when the amount can be made certain. *Hall* v. *Hall*, 2 McCord, c. 281; *Pool* v.

Stone *v.* North.

*Ward*, 21 Pick. 398; 1 Williams' Executors, 527; 5 Binney, 475; 18 Pick. 123.

GOODENOW, J. — The interest which Lucretia Jewett had by the will of Enoch Jewett in the *residue* of his estate, was not an annuity, but it was an estate for her life in all the residue of the personal estate.

We cannot come to any other conclusion without disregarding the plain, unambiguous language of the will. Such as, "In the remaining property and estate which I hereby give and devise to her, I give and devise *a life estate* only. I give and devise to my beloved wife the use, improvement, income and issue of my house and lot and out-houses in Pittston where I now live, to have and to hold, *during her natural life* and no longer. I give and bequeath to her in addition, the use, income or interest of all the personal estate of which I may die possessed, (not herein before given and bequeathed to the several legatees mentioned,) to have, possess and enjoy to her absolutely, *for and during her natural life*, and no longer."

It has been decided in this State, that a devise of the net profits of land is, by legal intendment, a devise of the land itself. *Earl* v. *Rowe*, 35 Maine, 414; *Andrews* v. *Boyd*, 5 Maine, 199. If a devise of the "use and income" of land, is deemed sufficient to vest the land itself in the devisee, we can see no good reason why a bequest of the "use, income and interest" of personal estate, does not vest the estate itself in the legatee.

By the provision in the will in this case, for the protection of those in remainder, the personal estate in which this life estate was created, was to remain in the hands of the executors, " so that at the termination of the life, the said personal property may, undiminished as far as practicable, go over and vest in the persons to whom the same is given as second takers." This only interposes a trustee, in whom the legal estate is vested, and does not affect the duration or magnitude of the estate.

We cannot perceive any difficulty which should prevent the income arising from bank stocks and other stocks, from being apportioned. The case finds that the widow of Enoch Jewett was paid the income to March 30, 1854, and was annually paid to the 30th of March in each year. She deceased on the 3d of September, 1854. We are of opinion, that the defendant, as executor of Enoch Jewett's will, is liable to pay to the plaintiffs, as executors of Lucretia Jewett's will, the income of the life legacy, from March 30, 1854, to Sept. 3, 1854, the time of her death. And, according to the agreement of the parties, the defendant must be defaulted.

· Damages *two hundred and seventy-two dollars,* with interest on the same from *January* 1, 1855, *to the day of rendition of judgment.*

TENNEY, C. J., concurred in the result. APPLETON and RICE, J. J., concurred. CUTTING, J., did not sit.